663 S.E.2d 357

**The STATE, Respondent,**

v.

**Jaleel V. PAGE, Appellant.**

**No. 4367.**

Court of Appeals of South Carolina.

Heard Dec. 12, 2007.

Decided April 3, 2008.

Appellate Defender Eleanor Duffy Cleary, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, Office of the Attorney General, of Columbia; I. McDuffie Stone, III, Solicitor, Fourteenth Judicial Circuit Solicitor's Office, of Beaufort, for Respondent.

HEARN, C.J.:

Jaleel V. Page appeals his convictions for conspiracy, attempted armed robbery, and possession of a pistol by a person under the age of 21. Page contends the circuit court erred in allowing the State to introduce evidence that a nontestifying co-defendant implicated Page in a statement to police where the statement did not fall into a hearsay exception, and Page's counsel did not "open the door" to the admission of the statement. We affirm.

## FACTS

On March 16, 2003, Willie Cunningham (Victim) was shot and killed near his home in York, South Carolina. Katrina Howard (Girlfriend) testified she had driven Page and Lamont McCollum to York that day to the Hall Street Apartments.[1] Upon arriving in York, Page and McCollum gathered with a group of approximately eight individuals in a park near the apartments. Both Page and McCollum showed the group, which included co-defendants A.J. Williams and Terrence McKnight, a gun each was carrying. The group was smoking marijuana and discussing "making a lick," which Williams testified was slang for "coming up on some extra money, doing something to come up with some extra money some way or somehow."

Rashad Simpson (Nephew), Victim's nephew, lived with Victim at the time of the murder. Nephew testified that on the same afternoon he was approached by Page and McCollum, neither of whom he knew, asking where they could buy marijuana. Nephew responded in the negative and walked away. Later that afternoon, the group, led principally by McCollum and Page, concocted a plan to rob Victim's trailer while Nephew was away. McCollum indicated that if Williams and McKnight served as lookouts, they "would get a cut of

---

1. Howard was McCollum's girlfriend and was pregnant with his child at the time of the incident; McCollum is a co-defendant in this case.

whatever [McCollum and Page took] from [Victim]'s house." Shortly thereafter, the group of four approached Victim's trailer. McCollum and Page went directly to the porch, and Williams testified he and McKnight stood off to the side of the trailer. Before McCollum and Page could go inside, Victim came to the door of his trailer. A discussion ensued, and Williams saw Victim reach for the gun that McCollum had pulled out of his pocket. Then, Williams testified, McCollum "pulled back the gun . . . and shot him two times in the chest."

None of the four participants came immediately forward to the police. Instead, Williams was first caught on tape some nine months later describing Victim's death to a fellow inmate who was wearing a wire, while both were incarcerated on other charges. Williams thereafter gave a full statement to Detective Sara Robbins (Detective). At the time of his arrest, McKnight gave police an oral statement that was later memorialized in writing, as well as a second written statement implicating himself and the other co-defendants. In addition, Girlfriend gave a statement conflicting with that of Williams, putting both McCollum and Page on Nephew's porch, but indicating Page was the one who shot Victim.

Page made a pre-trial motion to suppress the statements implicating him if McKnight chose not to testify, but the motion was denied. At trial, a redacted version of McKnight's statement, replacing any mention of Page with "another guy" or the "other guy," was admitted into evidence over Page's objection. McKnight was present at the trial, but chose not to testify. McKnight's statements confirm that both McCollum and Page had guns on the day in question, and were interested in robbing Victim's trailer.

On cross-examination, Page questioned Detective extensively about her investigation and the steps leading to the charges and ultimate arrests of Page, McCollum, and McKnight.[2] Page's cross-examination of Detective attempted to show how the State had very little evidence to link Page to the murder and attempted armed robbery. Thereafter, the State made a motion to admit McKnight's full and complete statement on the basis Page had opened the door to allow the unredacted

---

2. Williams, as referenced above, was already in custody, and gave Detective several statements which led to the other defendants' arrests.

evidence. The circuit court agreed, and admitted McKnight's unredacted statement.

The jury found Page guilty of conspiracy, attempted armed robbery, and possession of a pistol by a person under the age of 21. Page was found not guilty of murder. This appeal followed.

## STANDARD OF REVIEW

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Gaster,* 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). In criminal cases, the appellate court sits to review errors of law only. *State v. Butler,* 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003). We are bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

Page asserts the circuit court erred in finding his counsel had "opened the door" to the admission of the unredacted statement of his nontestifying co-defendant. We disagree and affirm.

"The constitutional right to confront and cross examine witnesses is essential to a fair trial in that it promotes reliability in criminal trials and insures [sic] that convictions will not result from testimony of individuals who cannot be challenged at trial." *State v. Martin,* 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987). The introduction of a nontestifying co-defendant's statement which implicates a defendant violates a defendant's right to confrontation because no opportunity to cross-examine the co-defendant is presented. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because the right to confrontation is so fundamental, limiting instructions are not an adequate substitute. *Id.*; *See also State v. Dennis,* 337 S.C. 275, 523 S.E.2d 173 (1999) (recognizing that in *Bruton,* the Supreme Court held that a defendant's

rights under the Confrontation Clause of the Sixth Amendment are violated by the admission of a nontestifying codefendant's confession that inculpates a defendant, even if a cautionary instruction is given).

Redaction has come into play as a tool to allow admission of a co-defendant's confession against the confessor in a joint trial. *State v. Holmes,* 342 S.C. 113, 119, 536 S.E.2d 671, 674 (2000). The point of redaction is to permit the confession to be used against the nontestifying confessor, while avoiding implicating his co-defendant. *Id.* The Confrontation Clause is not violated when a defendant's name is redacted but other evidence links the statement's application to the defendant, if a proper limiting instruction is given. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (holding "the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.").

██ Here, as stated above, after Page's cross-examination of Detective, the State moved to admit McKnight's unredacted statement on the basis that Page had opened the door to this testimony due to his questions on Detective's investigative techniques and the sufficiency of evidence linked to Page. It is firmly established that otherwise inadmissible evidence may be properly admitted when opposing counsel opens the door to that evidence. *State v. Young,* 364 S.C. 476, 485, 613 S.E.2d 386, 391 (Ct.App.2005) *cert. granted,* Jan. 2007; *See also State v. Curtis,* 356 S.C. 622, 632, 591 S.E.2d 600, 605 (2004) ("Given that [defendants] maintained that [the company] did not allow pornographic materials or links on the website, it is patent that they opened the door to this line of inquiry."); *State v. White,* 361 S.C. 407, 415–16, 605 S.E.2d 540, 544 (2004) (ruling expert could testify that she believed the victim in this case because defendant opened the door by cross-examining expert about other cases in which she did not believe victim); *State v. Dunlap,* 353 S.C. 539, 541, 579 S.E.2d 318, 319 (2003) (holding defense counsel's opening statement "opened the door to the introduction of evidence rebutting the contention that [defendant] was merely an addict"); *State v. Taylor,* 333 S.C. 159, 175, 508 S.E.2d 870, 878 (1998) ("[B]ecause appellant opened

the door about his relationship with his wife, the solicitor was entitled to cross-examine him regarding the relationship, even if the responses brought out appellant's prior criminal domestic violence conviction.").

In the present case, the court found Page attempted to elicit replies from Detective indicating the only evidence she had gathered linking Page to the crime were contradictory statements and testimony of Williams and Girlfriend, while, in reality, she had also used co-defendant McKnight's statements. This, the court determined, reflected on Detective's credibility as a witness and on the quality of the investigation she undertook that led to Page's arrest. As a result, the court found Page had opened the door during his cross-examination to the extent that Detective's testimony warranted bolstering. Detective was then allowed to testify the "other guy" identified in McKnight's statement was Page, and the court gave a limiting instruction to the jury that it should not consider the evidence against Page, but only as to the credibility of Detective and her investigation.

■ Whether a person opens the door to the admission of otherwise inadmissible evidence during the course of a trial is addressed to the sound discretion of the trial judge. *State v. Adcock*, 194 S.C. 234, 234, 9 S.E.2d 730, 732 (1940). *See also Corbett v. Fleetwood Homes of North Carolina*, 213 F.3d 630 (Table), 2000 WL 530325 (C.A.4 (S.C.)) (2000). While we recognize the discretionary authority of the trial judge in this area, we believe he erred in finding that Page's counsel's zealous representation of his client required the admission of this inadmissible evidence in order to rehabilitate Detective's investigative techniques. Nevertheless, we find any error resulting from the admission of the unredacted statement was harmless.

■ Error is harmless where it could not reasonably have affected the trial's outcome. *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). No definite rule of law governs the finding that an error was harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990). In

considering whether error is harmless, a case's particular facts must be considered along with various factors including:

> ... the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*State v. Clark*, 315 S.C. 478, 481, 445 S.E.2d 633, 635 (1994) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Thus, an insubstantial error not affecting the result of the trial is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached." *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989). Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard*, 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991).

Harmless error was found in *State v. Gillian*, where the testimony was "largely cumulative" to testimony from other witnesses and other evidence suggested Gillian was guilty. *State v. Gillian*, 360 S.C. 433, 456–57, 602 S.E.2d 62, 74–75 (Ct.App.2004), *aff'd as modified on other grounds*, 373 S.C. 601, 646 S.E.2d 872 (2007). In *Gillian*, we stated that "[n]o definite rule of law governs the finding that an error was harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." Id., at 454–55, 602 S.E.2d at 73.

Applying the *Van Arsdall* factors to the case at hand, we note that all of McKnight's statement mentioning Page was either cumulative or corroborated by other witnesses. McKnight's statement references Page specifically on four occasions. The first two occasions, McKnight references the two "little pocket guns" McCollum and Page were carrying. As described above, co-defendant Williams had already testified McCollum was carrying "a little small .25" and that "it was an automatic." Meanwhile, Williams testified that Page carried "a little .32, old rusty looking .32 ... revolver."

The third occasion McKnight's statement mentions Page, it places him at the apartments, and repeats that "[McCollum]

and Page kept playing with their guns, pulling them out and pointing at us playing." In addition to Williams' testimony that Page had a gun, the testimony or statements of four people placed Page at the apartments. These included: Nephew, Girlfriend, Williams, and Mary Burress whose statement placing McCollum and Page on her porch at the Hall Street Apartments the day of Victim's murder was read into evidence by Detective during her testimony. Finally, McKnight's statement placed Page on Nephew's porch during the commission of the murder. As indicated above, the testimony of both Williams and Girlfriend had already placed Page on the porch; therefore McKnight's statement was merely cumulative to the evidence already on the record.

Moreover, *prior* to the admission of the unredacted statement, Detective was asked to respond to a question on cross-examination from Page as to whether she corroborated the details of Williams' statements to police. Detective testified that "[the police] did talk to other people and were unable to corroborate [Williams's statements] until *we corroborated it through Terrance McKnight's statement.*" (emphasis added). This testimony was not objected to at the time. A contemporaneous objection is required to preserve issues for direct appellate review. *Webb v. CSX Transp., Inc.,* 364 S.C. 639, 657, 615 S.E.2d 440, 450 (2005). As the Supreme Court has stressed on several occasions, the Constitution entitles a criminal defendant to a fair trial, not a perfect one. *See United States v. Hasting,* 461 U.S. 499, 508–509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Bruton,* 391 U.S. at 135, 88 S.Ct. 1620.

## CONCLUSION

As a result of the foregoing, we hold that any error allowing the introduction of Page's nontestifying co-defendant's statement implicating Page to the police was harmless beyond a reasonable doubt. The decision of the circuit court is accordingly

**AFFIRMED.**

KITTREDGE, J., and THOMAS, J., concur.