710 S.E.2d 55

**The STATE, Respondent,**

v.

**Najjar De'Breece BYERS, Petitioner.**

**No. 26976.**

Supreme Court of South Carolina.

Heard March 16, 2011.

Decided May 23, 2011.

440

Robert A. Muckenfuss, of McGuire Woods, of Charlotte, for Petitioner.

Attorney General Alan Wilson, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William Blitch, Jr., all of Columbia, and Solicitor Kevin Scott Brackett, of York, for Respondent.

Chief Justice TOAL.

Najjar De'Breece Byers (Petitioner) appeals the decision of the court of appeals upholding the circuit court's denial of Petitioner's motion to strike a witness's testimony. We reverse.

### FACTS/PROCEDURAL BACKGROUND

On the evening of June 10, 2005, at approximately 10:10 p.m., the Fort Rock Bingo Hall, located in Rock Hill, South Carolina, was robbed at gunpoint. At approximately 11:15 p.m. that same evening, a Mecklenburg County police officer stopped a blue Nissan Altima in downtown Charlotte after noticing its occupants were not wearing seat belts. Petitioner was a passenger in this vehicle, along with William Crisco, Woodrow Thompson, and Jamie Harris. Thompson gave the officer consent to search the vehicle, and that search yielded a cash register till, two handguns, and two ski masks. The

officer testified the local police department notified him that a police division near the South Carolina–North Carolina border was on the lookout for a blue vehicle occupied by four black males who committed an armed robbery where a cash till was taken. The officer arrested Petitioner, along with the other three passengers, in connection with the armed robbery reported in Rock Hill. According to the police report, Petitioner was the only sober passenger. Two of the passengers, Crisco and Thompson, pled guilty to the armed robbery charges. Thompson is Petitioner's cousin. Several witnesses testified that Petitioner did not know the other two passengers, Crisco and Harris.

The key issue in this case is whether or not Petitioner was a passenger in the vehicle at the time the robbery occurred. At trial, the State of South Carolina (State) presented the testimony of Crisco and Thompson. Crisco's testimony was somewhat contradictory. He testified he had been using cocaine and drinking alcohol since noon on the day of the robbery with Harris, so he had a foggy recollection of the events that occurred that day. In fact, Crisco was treated at the hospital for dehydration following his arrest. Crisco initially testified just he, Harris, and Thompson drove to Rock Hill and robbed the bingo hall. Shortly after making that statement, he testified that two people, whom he thought were Harris and Petitioner, stayed in the car while he and Thompson robbed the bingo hall; confirming there was "no question" there were four people in the car in Rock Hill. Defense counsel pointed out that on the night of his arrest Crisco told the investigator that only Harris and Thompson accompanied him to Rock Hill. When defense counsel pressed him about exactly who was in the car in Rock Hill, Crisco responded:

> We all came, but the only ones that really had something to do with the robbery was me, Jamie, and Woodrow. We was the only ones that had something to do with the robbery, 'cause Jamie knew about [the bingo hall], and me and Woodrow went in and done it.

When defense counsel asked Crisco whether he knew Petitioner, the following exchange took place:

> Counsel: But you're testifying today after pleading guilty yesterday that that person was Najjar Byers?

Crisco: That's what they said in the motions that it was Najjar Byers.

Counsel: When you say that's what they said in the motions, what do you mean?

Crisco: In the motion of discovery. They had his name in it.

Counsel: Who had his name in it?

Crisco: The police and Woodrow Thompson. So I know [Woodrow] wasn't high on no drugs, so I know he know who he is.

Counsel: So what you're saying is the reason you think that was Najjar Byers is because that's what the police put in their report?

Crisco: Yes, sir; yes, sir.

Counsel: Your Honor, I would move to strike any of his testimony about Najjar Byers. He's been relying on the police report.

Court: Counsel, denied. That's not a proper motion. His testimony stands for itself.

Counsel: Okay. But you have no other independent recollection of Najjar Byers being in the car?

Crisco: No, sir.

The testimony of Thompson, Petitioner's cousin, was less than enlightening. Thompson refused to testify about any events that occurred in South Carolina. Thompson did state, however, that he drove around with his girlfriend in Charlotte earlier that day, but that Harris, Crisco, and Petitioner got in the car with him when it was getting dark. Thompson also confirmed he was arrested with the same people he had been riding with earlier that evening, and at the time the police officer stopped him, no one had gotten in or out of his car within at least the past fifteen minutes.

The investigator to the crime did not find any fingerprints linking Petitioner to the crime. The State presented three eye witnesses who worked at the bingo hall. Two of these witnesses were inside the bingo hall at the time of the robbery and both testified one man went behind the counter to take the cash till, while another man stood at the door. Neither witness could identify the men. The third witness testified he

was outside the bingo hall parking cars and a man held a gun to his back and told him to get on his knees. Similarly, that witness could not identify the gunman.

Petitioner's mother (Ms. Johnson), father (Mr. Byers), and ex-girlfriend testified for Petitioner as alibi witnesses. Ms. Johnson stated she was at home with Petitioner until approximately 8:45 p.m. on the evening of his arrest when she left her home to visit her sister. She stated Petitioner and his girlfriend were at the house when she left. Ms. Johnson testified she spoke to Petitioner several times during the evening on his cell phone and, at approximately 9:30 p.m., Petitioner told her he was at his father's house. Petitioner's ex-girlfriend testified Petitioner left his home shortly after 9:00 p.m. She stated she did not know where he was going but he did not indicate he was going anywhere with Crisco, Harris, or Thompson. Mr. Byers testified he went to his girlfriend's house at approximately 9:45 that evening and Petitioner was waiting for him on the front porch. Mr. Byers testified he dropped Petitioner at a bar in downtown Charlotte around 10:00 p.m.

Defense counsel moved for a directed verdict after the State presented its case, and again after at the close of all the evidence. The circuit court judge denied both motions. The jury found Petitioner guilty of armed robbery and criminal conspiracy, but acquitted him on the charge of possession of a firearm during the commission of a violent crime. The circuit court judge sentenced Petitioner to concurrent terms of twelve years imprisonment for armed robbery and five years imprisonment for criminal conspiracy.

The court of appeals affirmed the circuit court in a Rule 220(b)(2), SCACR, per curiam opinion. This case is before the Court pursuant to Rule 242(a), SCACR.

## ISSUES

I.    Whether Petitioner's objection to the circuit court's admission of hearsay testimony was timely and specific.

II.   Whether it was harmless error for the circuit court to admit certain hearsay testimony.

444

▆▆▆ "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Williams*, 386 S.C. 503, 509, 690 S.E.2d 62, 65 (2010). "An abuse of discretion occurs when the trial court's ruling is based on an error of law." *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). To warrant reversal based on the wrongful admission of evidence, the complaining party must prove resulting prejudice. *Vaught v. A.O. Hardee & Sons, Inc.*, 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005). Prejudice occurs when there is reasonable probability the wrongly admitted evidence influenced the jury's verdict. *Id.*

## ANALYSIS

### I. Whether Petitioner's Objection was Timely and Specific

▆▆ Petitioner argues the motion to strike Crisco's hearsay testimony was timely and specific and therefore, preserved for review. We agree.

▆▆▆ For an objection to be preserved for appellate review, the objection must be made at the time the evidence is presented, *State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996), and with sufficient specificity to inform the circuit court judge of the point being urged by the objector, *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). When a witness answers a question before an objection is made, the objecting party must make a motion to strike the answer to preserve the issue of that statement's admissibility. *See State v. Saltz*, 346 S.C. 114, 129, 551 S.E.2d 240, 248 (2001) (finding a motion to strike was unnecessary because the objection to the hearsay testimony had been overruled).

In this case, defense counsel motioned to strike Crisco's statement immediately after Crisco represented he was relying on a discovery motion to identify Petitioner. With the greatest respect for the learned opinion of the court of appeals, we do not understand the basis for its conclusion that counsel's motion to strike was not contemporaneously made.

In upholding the circuit court's decision to deny Petitioner's motion to strike, the court of appeals quoted the proposition from *State v. Rice*, "[u]nless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review." 375 S.C. 302, 322–23, 652 S.E.2d 409, 419 (App.2007). In that case, trial counsel motioned to strike certain testimony immediately after the witness made the alleged hearsay statement. *Id.* The court of appeals determined the objection was untimely by placing emphasis on the manner in which trial counsel raised issue with the statement: "Trial counsel did not object when Officer Smith made the alleged hearsay statement. Instead, counsel made a motion to strike. . . . Here, trial counsel never actually made an objection, only a motion to strike." *Id.*

In this case, the State argues because Petitioner's motion to strike was not preceded by an objection, there was no contemporaneous objection. The rationale behind the requirement of a contemporaneous objection is to "enable[ ] trial judges to make reasoned decisions by appropriately developing issues by way of argument, both for or against any particular legal proposition." *State v. Torrence*, 305 S.C. 45, 67, 406 S.E.2d 315, 327 (1991). In our opinion, defense counsel's purpose would not have been made clearer had he used the word "objection" before making a motion to strike. Moreover, the South Carolina Rules of Evidence state that an error may not be found for the wrongful admission of evidence unless "a timely objection *or* motion to strike appears of record." Rule 103(a)(1), SCRE (emphasis added). Under the Rules of Evidence, Petitioner clearly preserved the issue of admissibility by moving to strike the hearsay testimony. To the extent *State v. Rice* stands for the proposition that preservation of an error in admitting evidence can only be accomplished if trial counsel follows the precise procedure of making an objection followed by a motion to strike, we overrule that proposition.

At oral argument, the State argued defense counsel's motion to strike was not timely because prior to Crisco making the statement at issue, he twice stated he was relying on other documents to recall the events of that evening. The two prior statements to which the State refers do not relate to the identification of Petitioner, which was crucial to Petitioner's guilt. Rather, those statements referred to the amount of the

robbery proceeds Crisco gave Harris, and the time Crisco believed he robbed the bingo hall. This information was not the primary piece of evidence Petitioner was seeking to elicit from Crisco. Therefore, we do not accept the State's argument that Petitioner's failure to object to those statements renders Petitioner's motion to strike untimely. The first time Crisco made a hearsay statement that was prejudicial to Petitioner, defense counsel motioned to strike. For this reason, we find the objection was timely.

Additionally, we find defense counsel's motion to strike Crisco's testimony was sufficiently specific to preserve the issue of admissibility for review.[1] For an admissibility error to be preserved, the objection must include a specific ground "if the specific ground was not apparent from the context." Rule 103(a)(1), SCRE. When supported by context, "[a] party need not use the exact name of a legal doctrine ..., but it must be clear the argument has been presented on that ground." *State v. Stahlnecker*, 386 S.C. 609, 617, 690 S.E.2d 565, 570 (2010). In this case, Crisco admitted on the stand he relied on a discovery motion for the identification of Petitioner. Defense counsel moved to strike all of Crisco's testimony about Petitioner on the ground that "[h]e's been relying on the police report."

---

1. The court of appeals did not rule on whether defense counsel's motion to strike was specific, but instead focused on the timeliness of the motion. Petitioner's primary argument to the court of appeals was that the motion to strike was specific. In a Petition for Rehearing, Petitioner again asked the court to determine the issue of specificity, but that petition was denied. Therefore, the specificity issue is preserved for our review. As an additional issue, Petitioner argues that because the timeliness of Petitioner's motion was not raised to the court of appeals, the court erred in ruling the issue unpreserved on the ground of timeliness. We disagree. An appellate court may affirm a judgment upon any ground appearing in the record on appeal, Rule 220(c), SCACR; and likewise, a respondent may ask the court to affirm on any ground appearing therein. Rule 208(b)(2), SCACR. Although neither party specifically argued Petitioner's motion to strike was untimely, the State supported its preservation argument with a factual comparison to *State v. Rice*, 375 S.C. at 302, 652 S.E.2d at 419, where the court of appeals found an objection unpreserved due to an untimely objection. Because the timeliness issue was reasonably clear from the State's brief before the court of appeals, we believe the court of appeals was at liberty to rule the objection was unpreserved on the basis of timeliness.

The State analogized this case to *State v. Rice* where trial counsel made a motion to strike, stating "[h]e's talking about what someone else did." 375 S.C. at 322, 652 S.E.2d at 419. The court of appeals in that case found the ground for objection was not apparent from the context because it appeared that trial counsel was concerned with whether the testifying officer's testimony was based on personal knowledge. *Id.* The determination of whether an objection is apparent from the context of witness examination is factually driven. Therefore, we do not believe *State v. Rice* is a measuring stick for judging the specificity of the motion to strike in this case. Although defense counsel did not state his ground for objection as hearsay, we believe it was apparent from the context of the cross-examination that defense counsel was objecting to the hearsay nature of Crisco's statement under Rule 802, SCRE. Thus, we conclude Petitioner's motion to strike Crisco's testimony was preserved for our review because it was both timely and specific. Accordingly, the circuit court's denial of Petitioner's motion to strike was error under Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

## II. Harmless Error

Petitioner argues the admission of Crisco's hearsay testimony was prejudicial because Crisco's testimony comprised the State's only evidence placing Petitioner in the vehicle at the time of the robbery. We agree that without Crisco's testimony, the jury had little evidence from which to conclude Petitioner was in the vehicle at the time of the robbery. Therefore, we find it was prejudicial error to admit Crisco's testimony, and we reverse the conviction on that ground.

"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). Where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached," an insubstantial error that does not affect the result of the trial is considered harmless. *Id.* A harmless error

analysis is contextual and specific to the circumstances of the case: "No definite rule of law governs [a finding of harmless error]; rather the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial." *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990).

In our opinion, Crisco's testimony concerning Petitioner reasonably affected the result of the trial. Without Crisco's testimony, the jury was left to consider the following evidence: Police stopped the vehicle approximately one hour after the robbery occurred, and it is undisputed Petitioner was in the car. Thompson testified Petitioner was with him in the car when it was "getting toward dark," and no one got in or out of the car for at least fifteen minutes before being stopped by the police officer. Still, the State was unable to elicit any direct statement from Thompson that Petitioner was in the car with him at the time of the robbery. The officer who stopped the vehicle testified he was told a precinct on the South Carolina–North Carolina border was on the lookout for a "blue unknown type vehicle occupied by four black males that committed an armed robbery." However, the State produced the testimony of three witnesses to the crime, and their cumulative testimony only identified three actors in the robbery—two men entered the bingo hall, while one man held an employee at gunpoint in the parking lot. The on-scene investigator could not link any fingerprints to Petitioner. Lastly, Mr. Byers provided Petitioner an alibi, stating he dropped Petitioner off at a bar in downtown Charlotte around 10:00 p.m.

On balance, we believe that without Crisco's testimony, another rational conclusion could have been reached by the jury. We find it telling that during deliberation the jury asked for a replay of all of Crisco's testimony, but only the testimony of Thompson that related to events in North Carolina. Therefore, we hold the wrongful admission of Crisco's hearsay testimony was prejudicial to Petitioner, and we reverse on that ground.

## CONCLUSION

In sum, we hold that Petitioner's objection to Crisco's testimony was properly preserved for our review, and further

find the court of appeals erred in affirming the circuit court judge's admission of Crisco's hearsay testimony. Because we believe the admission of this testimony was prejudicial to Petitioner, we reverse Petitioner's conviction.

**REVERSED.**

BEATTY, KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.