LOCKEMY, C.J.:
**491 Denzel Heyward appeals his convictions for attempted murder, armed robbery, and possession of a weapon during the commission of a violent crime. Heyward argues the trial court erred in (1) admitting a photo lineup identification into evidence; (2) admitting evidence of domestic violence by Heyward against a witness; and (3) commencing sentencing proceedings at 1:30 a.m. and permitting victim impact testimony unrelated to the crimes for which Heyward was convicted. We affirm.
**492 FACTS/PROCEDURAL BACKGROUND
Heyward was indicted in January 2014 for the murder of Kadeem Chambers, the attempted murder of Jujuain Hemingway, armed robbery, and possession of a weapon during the commission of a violent crime. A jury trial was held November 10-15, 2014.
At trial, Quasantrina Rivers[1] testified for the State. According to Rivers, on the night of May 16, 2012, she drove Heyward and Dashaun Simmons[2] to Johns Island, South Carolina. Rivers testified she and Heyward had a disagreement that night and she was forced into the car. Rivers drove Heyward and Simmons to the home of "Skrill," a friend of Heyward. When they arrived, Heyward entered Skrill's home and returned with a duffel bag containing a gun that he then placed in the trunk of Rivers' car. Rivers then drove Heyward and Simmons to the home of Lorenzo Mehciz. According to Rivers, Chambers and Hemingway arrived at Lorenzo's home in another car shortly thereafter. Rivers testified Heyward approached Chambers and "bum-rushed" him, slamming him against his car. Simmons, armed with a gun, then ran towards the men and ordered Chambers and Hemingway to get on the ground. Heyward and Simmons repeatedly asked Chambers and Hemingway, "Where is the money at" and the men replied they didn't have anything. Rivers testified Heyward "stomped" Hemingway's head while he was on the ground multiple times. Simmons then fired a shot towards Hemingway who was still lying on the ground. According to Rivers, Chambers began tussling with Simmons on the ground and two more shots were fired, both striking Chambers. Heyward and Simmons ran back towards Rivers' car, placed the gun in the backseat, and Rivers drove the car away from the scene. Chambers and Hemingway also ran from the scene. Chambers was found by officers shortly after the shooting bleeding heavily in his wrecked car. Chambers told an officer he was shot by "Fat." Several witnesses stated Heyward's nickname is "Fat." Chambers later died at the hospital.
**493 After the shooting, Rivers drove Heyward and Simmons back to Skrill's house. Rivers testified Heyward talked to Lorenzo on the phone after the shooting and instructed Lorenzo not to discuss what happened.[3] Verna Lockhart-Carter, Lorenzo's mother, also testified at the trial. The shooting took place *435 outside the home she shared with Lorenzo. Lockhart-Carter testified she arrived home on the night of May 16, 2012, and Lorenzo was outside talking to Heyward.
On May 17, 2012, just hours after the shooting, Hemingway gave descriptions of the assailants to investigators. On May 18, 2012, investigators presented Hemingway with a six-person photo lineup containing Heyward's photo. Hemingway failed to make an identification. The following day, investigators presented Hemingway with a second photo lineup also containing a photo of Heyward. Hemingway identified Heyward. Hemingway was unable to identify Simmons or Rivers in subsequent photo lineups. Heyward was subsequently arrested.
The jury found Heyward guilty of attempted murder, armed robbery, and possession of a weapon during the commission of a violent crime. A mistrial was declared as to the murder charge. The trial court sentenced Heyward to consecutive sentences of thirty years for attempted murder, thirty years for armed robbery, and five years for the weapons charge. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, this [c]ourt sits to review errors of law only and is bound by factual findings of the trial court unless an abuse of discretion is shown." State v. Laney , 367 S.C. 639, 643, 627 S.E.2d 726, 729 (2006). An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. State v. Black , 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012).
LAW/ANALYSIS
I. Admission of photo lineup identification
Heyward argues the trial court erred in admitting the photo lineup identification made by Hemingway. We disagree.
**494 The decision of whether to admit or exclude evidence is within the sound discretion of the trial court. State v. Jackson , 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). Likewise, the determination of whether to admit an eyewitness's identification is at the discretion of the trial court. State v. Moore , 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000). This court will not disturb the trial court's admissibility determinations absent a prejudicial abuse of discretion. State v. Adkins , 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003).
In Neil v. Biggers , the United States Supreme Court set forth a two-pronged test to determine whether due process requires the suppression of an eyewitness identification. 409 U.S. 188, 198-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). To ensure due process, Neil v. Biggers requires courts to assess, on a case-by-case basis, the following: (1) whether the identification resulted from unnecessary and unduly suggestive police procedures, and if so, (2) whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. State v. Liverman , 398 S.C. 130, 138, 727 S.E.2d 422, 426 (2012). "Under the totality of the circumstances, the factors to be considered in assessing the reliability of an otherwise unduly suggestive identification procedure are: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." Id.
In the instant case, a Neil v. Biggers hearing was held prior to trial to determine the admissibility of the photo lineup identification made by Hemingway. At the hearing, Hemingway testified he got a "good look" at the two men involved in the shooting because they were "right in [his] face." Hemingway further testified he was not truthful with investigators regarding the first photo lineup he was shown. According to Hemingway, he recognized Heyward in the first lineup but didn't tell investigators because he was "scared," "angry," and "hadn't accepted the fact that [Chambers] was gone." Hemingway subsequently testified he thought investigators "[knew] something [he] didn't know" because they kept "showing me the same picture."
*436 **495 Defense counsel moved to suppress the lineup arguing it was unduly suggestive because Heyward's photo appeared in both lineups shown to Hemingway. The trial court agreed, but ruled the lineup was reliable. The court found persuasive Hemingway's testimony that he "was able to identify [Heyward] on the first day, but just chose to just not verbalize that because he was angry [, which] suggests to me that he was not, in fact, influenced by the second lineup."
On appeal, Heyward argues the trial court erred in (1) failing to consider the Neil v. Biggers reliability factors after finding the photo lineup was unduly suggestive, and (2) relying exclusively on Hemingway's explanation for his dishonesty.
We find the trial court did not abuse its discretion in admitting Hemingway's identification of Heyward. The court's finding the lineup was reliable was supported by the evidence. Hemingway had ample opportunity to view Heyward at the time of the crime as evidenced by his testimony that he was able to observe Heyward for between five and ten minutes. Hemingway noted he stood next to Heyward when he was asked to open the trunk of his car. As to his level of certainty, Hemingway testified he was able to get a "good look" at Heyward because he was right in his face. Hemingway was also able to describe Heyward's height, facial hair, and clothing. In addition, given Hemingway identified Heyward one day after the crime was committed, the length of time between the crime and the identification was not so prolonged to be unreliable.
In addition, as to Heyward's second error claim, we note the trial court heard all of the testimony and determined Hemingway was untruthful when he claimed he did not see Heyward in the first photo lineup. Because the trial court was in a better position to judge Hemingway's credibility, we do not believe the court abused its discretion in finding Hemingway recognized Heyward in the first photo lineup. See State v. Tutton, 354 S.C. 319, 325-26, 580 S.E.2d 186, 190 (Ct. App. 2003) ("The determination of a witness's credibility must be left to the trial judge who saw and heard the witness and is therefore in a better position to evaluate his or her veracity.").
**496 Even assuming the trial court erred in admitting Hemingway's photo lineup identification, we find Heyward was not prejudiced by its admission. Defense counsel was able to cross examine Heyward on both the suggestiveness and the reliability of the lineups. See Liverman , 398 S.C. at 143-44, 727 S.E.2d at 428-29 (finding any error in the admission of identification evidence to be harmless where the reliability of the identification evidence was fully vetted at trial, the weaknesses in the evidence were exposed on cross-examination, and defense counsel reminded the jury of those weaknesses during closing arguments). The photo lineup identification was also cumulative to the eyewitness testimony given by Rivers and Hemingway's in-court identification of Heyward. Accordingly, we affirm the trial court's decision to admit the identification.
II. Evidence of domestic violence
Heyward argues the trial court erred in admitting evidence he physically abused Rivers. We disagree.
Prior to trial, defense counsel moved to exclude any testimony regarding allegations made by Rivers that Heyward had physically abused her. The solicitor stated Heyward had control over Rivers and she was "sort of under the spell of Denzel Heyward." The trial court noted an incident of abuse that happened the night of the shooting would be different from an incident of abuse months prior. The court held it had not been presented with any argument to support the admission of the domestic violence allegations pursuant to Rule 404(b), SCRE. The court also noted the door could be opened by the defense, which would make the evidence admissible.
Sidearis Singleton, Rivers' mother, testified for the State at trial. In her testimony, Singleton recounted her conversation with Rivers where she told Rivers to turn herself in to the authorities after learning about the shooting. On cross examination, defense counsel questioned Singleton about whether she was aware Rivers had attempted suicide.
*437 He also asked Singleton whether she was aware if Rivers had ever accused Singleton's husband of sexual assault. Next, defense counsel asked Singleton if she was aware Rivers had worked as a stripper. The solicitor objected to that question based on **497 relevancy and defense counsel argued the question was relevant to Rivers' mental state. The court sustained the objection.
On redirect, the State asked Singleton who had abused Rivers. Defense counsel objected without specificity and the court stated "[w]ell you raised the-you raised the issue. I guess she would-you introduced it, so-." Subsequently, an off-the-record bench conference was held. Thereafter, Singleton testified Rivers was abused by Heyward. According to Singleton, Rivers was abused more than once and her injuries included a busted lip and pulled out hair. Rivers later testified she endured a violent relationship with Heyward as the aggressor.
On appeal, Heyward argues (1) the court erred in ruling defense counsel had opened the door to the abuse testimony, and (2) the court should have excluded the evidence under Rules 404(B) and 403, SCRE because it was inflammatory, prejudicial, and had no probative value.
A party who opens the door to evidence cannot complain of its admission. State v. Robinson , 305 S.C. 469, 474, 409 S.E.2d 404, 408 (1991). "[W]hen a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially." State v. Beam , 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct. App. 1999). "Whether a person opens the door to the admission of otherwise inadmissible evidence during the course of a trial is addressed to the sound discretion of the trial judge." State v. Page , 378 S.C. 476, 483, 663 S.E.2d 357, 360 (Ct. App. 2008).
We find the trial court did not abuse its discretion in admitting Singleton's testimony regarding domestic violence. First, we note defense counsel's objection during Singleton's testimony was not specific and no objection was made following the off-the-record bench conference. See State v. New , 338 S.C. 313, 318, 526 S.E.2d 237, 239 (Ct. App. 1999) (holding a general objection which does not specify the particular ground on which the objection is based is insufficient to preserve the issue for review); York v. Conway Ford, Inc. , 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) ("An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review."). Second, we find **498 defense counsel opened the door to the issue of abuse during the cross-examination of Singleton. Finally, we find Singleton's testimony as to the abuse suffered by Rivers was cumulative to Rivers' own testimony regarding abuse. We note no objection was made during Rivers' testimony on direct examination that Heyward was abusive towards her during their relationship.
III. Sentencing
Heyward argues the trial court erred in commencing sentencing proceedings at 1:30 a.m. and permitting victim impact testimony unrelated to the crimes for which he was convicted. We disagree.
Following the dismissal of the jury at 1:30 a.m., Heyward asked the trial court to "delay sentencing due to the hour to the extent we've all been here." The State asked the court to proceed with the sentencing because the victim's family was from out of town and one family member had to work the following day. The State argued it would "be a great hardship for these folks to come back for sentencing." The trial court denied Heyward's request and proceeded with sentencing. The State presented the court with victim impact testimony in the form of pictures of Chambers, a video tribute prepared by Chambers' family, and a letter read by Chambers' sister.
On appeal, Heyward argues (1) his due process rights were violated by the late hour of his sentencing; (2) he was not given adequate notice of the materials the victims would present to the court; and (3) the court erroneously allowed testimony focusing on Chambers' death when the jury did not convict Heyward of Chambers' murder.
*438 We find these arguments are not preserved for our review. Heyward did not object to the court conducting sentencing at a late hour as a violation of his due process rights. See State v. Dunbar , 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground."); State v. Dickman , 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (stating a party cannot argue one ground below and then argue another ground on appeal). Furthermore, Heyward did not **499 raise any objection to the presentation of the victim impact testimony. See Dunbar , 356 S.C. at 142, 587 S.E.2d at 693 ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court].").
CONCLUSION
We affirm Heyward's convictions for attempted murder, armed robbery, and possession of a weapon during the commission of a violent crime.
AFFIRMED.
HUFF and HILL, JJ., concur.

Rivers is the mother of Heyward's daughter.

Simmons was indicted on identical counts as Heyward and the two men were tried together.

Rivers was charged with accessory after the fact to murder, attempted murder, and armed robbery. The State agreed to reduce Rivers' bond in exchange for her proffered statement.