# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Denzel Marquise Heyward, Petitioner.

Appellate Case No. 2018-000981

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Roger M. Young, Sr., Circuit Court Judge

---

Opinion No. 27887
Heard March 27, 2019 – Filed May 15, 2019

---

## REVERSED AND REMANDED

---

Chief Appellate Defender Robert Michael Dudek and
Appellate Defender Donald Michael Mathison, both of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant
Attorney General Jonathan Scott Matthews, and Assistant
Attorney General James Clayton Mitchell, III, all of
Columbia, for Respondent.

---

**JUSTICE HEARN:** Petitioner Denzel Heyward was indicted for murder, attempted
murder, armed robbery, and possessing a firearm during a crime of violence for an

incident that resulted in the death of Kadeem Chambers. The jury could not reach a verdict as to murder, but found Heyward guilty of the remaining charges. The trial court sentenced him to an aggregate term of 65 years. Heyward appealed, asserting the court erred by admitting a photo lineup identification and by finding his counsel opened the door to the admission of testimony that he had previously committed domestic violence. The court of appeals affirmed. *State v. Heyward*, 422 S.C. 488, 812 S.E.2d 432 (Ct. App. 2018). We now reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

During the trial, Quasantrina Rivers—the mother of Heyward's child and a cooperating codefendant—testified that she drove Heyward and Dashaun Simmons—another codefendant—to a residence in Ridgeville where Heyward retrieved a gun. She then drove the men to an acquaintance's house on Johns Island. Another car containing two men (Chambers and his brother, Jujuain Hemingway) drove up, and after speaking to one of the occupants, Heyward "bum rushed"[1] him and pushed him against the car. Simmons then approached the car from the woods carrying a rifle and forced the two men to lay on the ground. Heyward and Simmons demanded to know "where everything was at," but the men responded they had nothing. Thereafter, Heyward stomped his foot on the back of Hemingway's head, and Simmons fired a shot in his direction. Heyward and Simmons forced the men to open the trunk of their car and took a suitcase from it. Chambers then began to "tussle" with Simmons when two shots rang out, striking Chambers. Heyward and Simmons fled with Rivers, who drove them back to Ridgeville. The group spent much of the next two days there before Rivers ultimately turned herself in to police. Chambers passed away at the hospital. Hemingway testified similarly regarding the events of the night in question.

Prior to trial, Heyward sought to prohibit Rivers from testifying that he had allegedly physically abused her during their relationship. In moving to exclude the testimony, he argued he had no prior convictions for domestic violence and the allegations had no bearing on any element of a crime charged, resulting only in undue prejudice.

The State explained it wanted to introduce the evidence to help the jury understand the complicated relationship between Heyward and Rivers, including the fact that despite agreeing to testify against Heyward, she continued to visit him

---

[1] "To attack or seize with an overpowering rush." "bum-rush." *Merriam-Webster.com*, 2019. (Last Visited April 2, 2019). *available at* https://www.merriam-webster.com/dictionary/bum-rush.

frequently in jail.  According to the State, the allegations demonstrated his ability to manipulate her.  Further, it helped explain why Rivers allegedly drove Heyward and Simmons to retrieve a gun, drove them to and from a robbery, and then took two days to turn herself in to police.  The State asserted allegations of domestic violence would not cause the jury to assume Heyward committed murder.

The trial court determined the State was attempting to introduce the evidence to demonstrate Heyward's bad character, which Rule 404(b), SCRE, is designed to prevent.  The court stated it would not allow Rivers to testify about prior incidents of abuse on direct examination, but noted the testimony could be permitted to rehabilitate her.

At trial, the State called Rivers' mother, Sidearis Singleton, who testified about Rivers' behavior after the incident and her decision to turn herself in.  On cross-examination, Heyward asked Singleton whether Rivers had attempted suicide before, whether she knew if Rivers had mental health issues, and whether Rivers had ever accused Singleton's husband of sexually assaulting her.  Singleton answered she did not know to each question.

On redirect, the State asked Singleton who had abused Rivers.  Heyward objected, and the court stated: "[w]ell, you raised the—you raised the issue.  I guess she would—you introduced it, so—."  The court then held an off-record bench conference at Heyward's request.  The State proceeded with questioning, asking Singleton who had physically harmed Rivers in any way.  She responded that Heyward had committed domestic violence against Rivers.  Singleton testified Heyward had a history of physically abusing Rivers and she had seen Rivers after some of the abuse, noticing her hair had been pulled out and her lip was busted or swollen.  Rivers later testified her relationship with Heyward included some violence, and she also recounted several instances of Heyward "fighting" her physically on the day of the incident.

The jury deliberated for approximately eight hours, sending multiple notes to the court, and were given an *Allen*[2] charge after reporting they could not reach an agreement.  At 1:20 a.m., the jury returned verdicts convicting Heyward and Simmons of attempted murder, armed robbery, and the weapons charge.  The jury could not reach a unanimous verdict on the murder charge.  Heyward requested the court continue sentencing due to the late hour, but the State asserted it would be a great hardship for Chambers' family to have to come back another day. Chambers' family submitted pictures, a video recording, and a victim impact statement for

---

[2] *Allen v. United States*, 164 U.S. 492 (1896).

sentencing purposes. The State asked for consecutive sentences. The court stated the evidence demonstrated lying in wait and "total disregard for other human beings." Consequently, the trial court found the maximum penalty was warranted and sentenced both Heyward and Simmons to 30 years for attempted murder, 30 years for armed robbery, and 5 years for the weapons charge, all to be served consecutively.

Heyward appealed, and the court of appeals affirmed. *Heyward*, 422 S.C. 488, 812 S.E.2d 432. The court held, in relevant part, that Heyward had failed to preserve the domestic violence testimony issue for review by not stating his objection for the record, but even if he had, counsel opened the door to the testimony. The court of appeals further determined that even if the circuit court erred, the testimony was cumulative to that of Rivers regarding physical abuse. We granted certiorari to review the decision.

## ISSUE[3]

Did the circuit court err in finding defense counsel's questioning of Singleton opened the door to testimony about prior instances of domestic violence Heyward committed against Rivers?

## STANDARD OF REVIEW

A trial court's determination that a party has opened the door to the introduction of otherwise inadmissible evidence is within the sound discretion of the trial judge and is reviewed for abuse. *State v. Page*, 378 S.C. 476, 483, 663 S.E.2d 357, 360 (Ct. App. 2008). This occurs when a trial court's conclusions lack evidentiary support or are controlled by an error of law. *State v. Collins*, 409 S.C. 524, 530, 763 S.E.2d 22, 25 (2014).

## DISCUSSION

Heyward argues the trial court erred by permitting testimony he previously abused Rivers because counsel did not open the door to its admission. He contends the issue is preserved for review because the substance of his objection was clear

---

[3] We also granted certiorari as to Heyward's other question: whether the circuit court erred by admitting Hemingway's identification of Heyward. We now dismiss the writ as improvidently granted as to this issue.

from the context of both the pre-trial hearing and the objections made at trial. Heyward asserts the prejudice from admission was substantial because it bolstered Rivers' credibility—which was central to the State's case—and painted him in a negative light.

The State contends the issue is not preserved because Heyward's counsel failed to state his objection on the record after the bench conference. The State notes counsel also failed to object when Rivers testified her relationship with Heyward included violence. The State argues that regardless, the door was opened to Singleton's testimony regarding domestic violence because Heyward's counsel asked her about whether Rivers had been abused, as well as her mental health and state of mind. Finally, the State asserts any error was harmless due to the significant evidence of Heyward's guilt.

A specific objection to an evidentiary ruling is required unless the grounds are apparent from context. Rule 103(a)(1), SCRE. However when this Court can discern the basis of the objection from the record, the issue is preserved for review. *See State v. Byers*, 392 S.C. 438, 444-47, 710 S.E.2d 55, 58-59 (2011).

A party may introduce otherwise inadmissible evidence in rebuttal when an opponent introduces evidence as to a particular fact or transaction. *State v. Young*, 364 S.C. 476, 486-87, 613 S.E.2d 386, 391-92 (Ct. App. 2005). However, we are wary of a "thinly-veiled attempt to show propensity" by way of the open-door doctrine. *State v. Young*, 378 S.C. 101, 106, 661 S.E.2d 387, 390 (2008). Testimony in response must be "proportional and confined to the topics to which counsel had opened the door." *Bowman v. State*, 422 S.C. 19, 42, 809 S.E.2d 232, 244 (2018).

Initially, while counsel failed to state the grounds for his objection to Singleton's testimony on the record—which he had done following other bench conferences during the trial—we believe the context of the pre-trial hearing and what was said on the record makes the grounds for the objection apparent. It is clear the possibility of counsel opening the door to testimony regarding domestic violence against Rivers was on everyone's mind. The circuit court extensively discussed the issue before trial; the State was looking for an opportunity to introduce the allegations; Heyward's counsel took care not to ask Singleton about physical abuse or Rivers' relationship with Heyward; and counsel immediately objected when the State sought to elicit the testimony from Singleton. The trial court no doubt understood the basis for the objection, but responded counsel had raised the issue, indicating the court believed the door had been opened. While counsel did not specify the basis for the objection and the ruling for the record after the bench conference, the context of the entire trial demonstrates the issue was raised and ruled

upon, preserving it for appellate review. *See Byers*, 392 S.C. at 444-47, 710 S.E.2d at 58-59.

As to the merits, we do not believe counsel opened the door to allegations Heyward physically abused Rivers. Counsel asked Singleton whether Rivers had attempted suicide, struggled with mental health issues, and accused Singleton's husband of sexual assault. None of these issues arise out of the same fact or transaction as past incidents of physical abuse Heyward may have committed against Rivers. *Young*, 364 S.C. at 486-87, 613 S.E.2d at 391-92. Moreover, the testimony the State elicited in response was not proportional or confined to the doors counsel had opened through his questioning of Singleton; *i.e.*, her suicide attempts, mental health, or sexual abuse. *Bowman*, 422 S.C. at 42, 809 S.E.2d at 244. Singleton proceeded to testify Heyward repeatedly physically abused Rivers, resulting in specific physical injuries. We believe the State thereby used the open-door doctrine to introduce propensity evidence, just as the circuit court recognized during the pre-trial hearing. *Young*, 378 S.C. at 106, 661 S.E.2d at 390. Consequently, we find no evidentiary support for the court's decision, which amounted to an abuse of discretion. *Collins*, 409 S.C. at 530, 763 S.E.2d at 25.

The State asserts any error was harmless in light of the evidence adduced at trial as a whole. We cannot agree, as the evidence of Heyward's guilt was not overwhelming. Further, while Rivers subsequently testified her relationship with Heyward included some violence and she recounted specific events from the day of the incident, Singleton's testimony had the effect of corroborating Rivers' testimony as a whole. Rivers was indeed the State's most important witness, and as a result, we cannot conclude Singleton's testimony was harmless because it later became cumulative. The evidence was introduced solely to demonstrate Heyward's poor character, and given the close case presented, we are unable to find the error was not prejudicial.

## CONCLUSION

Accordingly, we **REVERSE** and **REMAND** the case for a new trial.

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**