661 S.E.2d 387

**The STATE, Respondent,**

v.

**Derringer YOUNG, Petitioner.**

**No. 26493.**

Supreme Court of South Carolina.

Heard April 3, 2008.
Decided May 19, 2008.
Rehearing Denied June 12, 2008.

102

Chief Appellate Defender Joseph L. Savitz III, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David Spencer, all of Columbia, and Ralph E. Hoisington, of Charleston, for Respondent.

Chief Justice TOAL.

A jury found Appellant Derringer Young (Young) guilty of kidnapping and assault and battery of a high and aggravated nature (ABHAN) as a lesser included offense of criminal sexual conduct (CSC) stemming from a drug transaction with a female victim. Young appealed on the grounds that the trial court improperly admitted evidence of prior convictions for CSC and criminal domestic violence (CDV). The court of appeals affirmed Young's conviction and this Court granted certiorari. We affirm the decision of the court of appeals as modified.

## Factual/Procedural Background

Young was charged with kidnapping, first-degree CSC, and possession with intent to distribute (PWID) stemming from a drug transaction with a female victim (Victim). Young pled guilty to the PWID charge and went to trial for the remaining charges. Young and Victim each testified at trial, giving different accounts of the night in question.

Victim testified that following dinner with her husband one evening, she drove to downtown Charleston alone to purchase crack cocaine for herself and her husband. She had purchased crack in this manner before and approached Young because he looked familiar from her past dealings. Victim sampled crack from Young and requested an amount to buy. Young did not have the desired amount on him, so Victim agreed to give him a ride in her vehicle to find more crack to purchase.

While driving around, Victim testified that she and Young smoked some of Young's crack together. Victim described Young as having a pleasant demeanor and testified that they initially got along with no problems. However, Victim claimed that after Young was able to locate and purchase the additional crack she requested, Young became angry when she told him she was going to take the crack home to smoke with her husband. Victim testified that at that point, Young hit her across the face and in the back of the head. Victim testified that Young forced his way into the driver's seat, drove to a secluded area, tied Victim's hands together, and raped her. Afterwards, Young drove around downtown Charleston all night, buying and selling crack out of Victim's car while Victim remained in the front seat with her hands bound.

Victim recounted that around nine o'clock the next morning, a Charleston police officer spotted Young and Victim in Victim's car in a parking lot behind an abandoned warehouse. Victim mouthed "please help me" to the officer. When Young saw the officer, he jumped into the driver's seat and sped away. Police located Young and Victim about ten minutes later and immediately arrested Young. Police noticed red marks and bruising on Victim's wrists and neck, and Victim was taken immediately to MUSC and given a rape exam, which was inconclusive as to whether sexual assault had

occurred. Examiners also noted bruising on Victim's face, neck, and arms, as well as marks on each wrist.

After the State called its last witness at trial, Young raised the issue of the admissibility of his prior convictions under Rule 609, SCRE, in an *in camera* hearing. Young had prior convictions for third-degree CSC, third-degree burglary, possession of a stolen vehicle, and failure to register as a sex offender. The trial court allowed the State to introduce evidence of Young's convictions for third-degree burglary and for possession of a stolen vehicle as general impeachment evidence under Rule 609(a)(1) and (a)(2) for the purpose of attacking Young's credibility as a witness. The trial court did not allow the State to refer specifically to the prior CSC conviction, but instead allowed the State to impeach Young's credibility by referring to the prior CSC conviction as "another felony for which he has been convicted."[1] The trial court also acknowledged that Young could open the door, via his testimony, to the admissibility of other prior convictions, including specific reference to the third-degree CSC conviction.

Following the trial court's *in camera* ruling, Young testified to a drastically different version of the facts surrounding his encounter with Victim. Young recounted that he sold crack to Victim and then rode in her car to a place where she could smoke the crack discretely. After Young and Victim finished smoking the crack Victim had purchased, Young testified that Victim requested more crack, but she did not have any money. Young agreed to get the drugs for her because he trusted her to pay him later. Thereafter, for the next several hours, Young and Victim smoked crack supplied by Young.

At one point, after Young left the car to purchase drugs, another drug dealer began talking to Victim. Young said he became angry because he thought Victim was trying to find another crack dealer. Young further testified that at Victim's insistence, the other drug dealer rode with them to a secluded spot where Young exited the vehicle, and Victim performed

---

1. The trial court did not allow introduction of the conviction for failure to register as a sex offender, finding that it was not a crime of dishonesty under Rule 609(a)(2), and that although the crime was punishable by imprisonment in excess of one year, the prejudicial effect of the conviction outweighed its probative value under Rule 403, SCRE.

oral sex on the other drug dealer in exchange for crack cocaine.

After dropping off the other drug dealer, Young stated that he was upset with Victim for demeaning herself and for betraying their "bond." They continued to drive around and smoke crack, and around 5 o'clock in the morning, Victim became upset about making Young angry. According to Young, Victim began crying and seeking Young's forgiveness. Young testified that he "hated[d] to see a female cry" and forgave her.

Following Young's direct examination, the State argued that Young opened the door to admission of his prior convictions for CSC in the third degree and for CDV by introducing evidence of his good character towards women with his comment about hating to see a woman cry. The trial judge ruled that Young had placed a character trait in issue and therefore allowed the State to impeach Young by asking him about his prior convictions for CDV and CSC.

The jury found Young guilty of kidnapping and ABHAN as a lesser included offense of CSC. The trial court sentenced Young to concurrent sentences of twenty-two years for kidnapping, ten years for ABHAN, and five years for the PWID charge. Young appealed on the grounds that the trial court improperly admitted evidence of Young's prior convictions for CDV and CSC for impeachment purpose. The court of appeals affirmed Young's convictions in *State v. Young,* 364 S.C. 476, 613 S.E.2d 386 (Ct.App.2005). This Court granted certiorari to review the court of appeals' decision, and Young raises the following issue for review:

Did the court of appeals err in affirming the admission of Young's prior convictions for impeachment purposes after Young "opened the door" with evidence of his good character towards women?

## LAW/ANALYSIS

Young argues that he did not open the door so that his prior conviction for CSC and CDV could be used to impeach him. We agree.

■ Evidence of a defendant's character is generally not admissible to show a propensity to act accordingly. Rule 404(a)(1), SCRE. However, when the accused offers evidence of his good character regarding specific character traits relevant to the crime charged, the solicitor has the right to cross-examine him as to particular bad acts or conduct. *State v. Major*, 301 S.C. 181, 391 S.E.2d 235 (1990). The State is restricted to showing bad character only for the traits initially focused on by the accused, and impeachment may be done by introducing prior convictions with extrinsic evidence. *Id.* at 185, 391 S.E.2d at 238.

We find that Young's testimony that he hated to see a woman cry did not open the door for the admission of his prior CDV and CSC convictions. Reading Young's testimony in its proper context, Young was not offering evidence of a specific character trait towards women in general. Rather, the isolated statement used to justify admission of the prior CDV and CSC convictions was simply part of Young's narrative recounting his version of the events that occurred on the night in question. For this reason, the State was limited to presenting evidence admissible under Rule 609, SCRE, to impeach Young's credibility. Pursuant to Rule 609(a)(1), such evidence is limited to prior convictions for crimes punishable by imprisonment in excess of one year, subject to Rule 403. Additionally, Rule 609(a)(2) permits evidence of convictions for crimes involving dishonesty.

In this case, questioning Young generally on "another felony for which he ha[d] been convicted," as the trial court properly permitted in the first instance pursuant to Rule 609, SCRE, was entirely sufficient to impeach Young's credibility. We find that the State's use of a specific prior conviction for the same offense that Young was currently standing trial for was only a thinly-veiled attempt to show propensity, rather than a sincere attempt at impeachment of Young's credibility. For this reason, we hold that the trial court erred in admitting Young's prior CDV and CSC convictions to impeach Young. *State v. Dunlap*, 353 S.C. 539, 542, 579 S.E.2d 318, 320 (2003) (ruling that when a prior crime is similar to the one for which the defendant is being tried, the danger of unfair prejudice to the defendant from impeachment by the prior offense weighs against its admission); *Green v. State*, 338 S.C. 428, 433–34, 527 S.E.2d 98, 101 (2000) (finding that in admitting evidence

pursuant to Rule 609, the trial court must consider the impeachment value of the prior crime, the timing of the prior crime, the similarity between the past crime and the charged crime, the importance of the defendant's testimony, and the centrality of the credibility issue).

 Young contends that because the trial court erred by admitting his prior CDV and CSC convictions, his convictions in this case should be reversed. We disagree.

In order for this Court to reverse a case based on erroneous admission of evidence, prejudice must be shown. *State v. Bell,* 302 S.C. 18, 27, 393 S.E.2d 364, 369 (1990). In this case, we find that the trial court's error was harmless. The jury took all the evidence into account and acquitted Young of CSC, indicating that the introduction of Young's prior CDV and CSC convictions did not affect the jury. Furthermore, there was substantial evidence in the record on which the jury could have found him guilty on the other charges. Accordingly, we affirm Young's convictions for kidnapping and ABHAN.

## CONCLUSION

For the foregoing reasons, we hold that the trial court committed harmless error in allowing the State to introduce Young's prior convictions for CDV and CSC. Accordingly, we affirm the decision of the court of appeals as modified and affirm Young's conviction for kidnapping and ABHAN.

MOORE, WALLER, BEATTY, JJ., and Acting Justice DIANE SCHAFER GOODSTEIN, concur.