**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Robert Carl Ware, Appellant.

Appellate Case No. 2016-000133

———————————

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-036
Submitted November 1, 2018 – Filed January 23, 2019

———————————

**AFFIRMED**

———————————

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Assistant
Attorney General Sherrie Butterbaugh, all of Columbia;
Solicitor Jimmy A. Richardson, II, of Conway, all for
Respondent.

———————————

**PER CURIAM:** Robert Carl Ware appeals his convictions for the murder of Randy Banks and possession of a weapon during the commission of a violent crime. We affirm.

## I.

Randy Banks and his fiancée, Sabrina Boatwright, lived at the Wave Rider condominium complex in Myrtle Beach. They had been friends with Ware for several years, and allowed Ware to stay on their couch in August 2014. Ware supplied Banks with prescription pain pills as payment for rent.

Boatwright testified Banks soon became aggravated with Ware's lack of household skills and failure to contribute to household chores. According to Boatwright, Banks confronted Ware on August 6, 2014, about moving out of the condominium.

Boatwright testified that around 2:00 a.m. the next morning, Ware knocked on the back door of the condominium, which was located in the bedroom. Banks answered and told Ware he would let him in the front door. Boatwright stayed in the bedroom but could hear Banks tell Ware he could sleep on the couch for another night. Banks told Ware he was tired of the disrespect Ware showed Banks and Boatwright and would talk with Ware more in the morning. Ware and Banks began arguing, and a scuffle ensued. Boatwright then heard gunshots, and later found Banks had been shot in the chest and Ware had fled.

Ware was arrested later that morning, while sitting in a truck parked near the Wave Rider. He had a .22 rifle with him and dropped several .22 bullets onto the ground during his arrest. Police found a fired .22 cartridge casing on the floor of Bank's condominium, which analysis later confirmed had been fired from Ware's rifle.

Matthew Griffin, the owner of a nearby liquor store, testified Ware visited the store on the night of August 6, 2014 and appeared angry. Griffin testified Ware seemed "cold" and was repeating the phrase, "I'm going to kill that motherfucker" as he walked through the store. Ware later testified he was referring to an unknown thief who had stolen his moped.

Ware testified about how he helped around the condominium, including buying food, calming Banks, and helping Boatwright clean. He stated Banks acknowledged how helpful he was and told him he was the "greatest."

On cross-examination, the solicitor asked Ware, without objection, if he had ever been told he was not allowed on the Wave Rider property. Ware admitted a maintenance worker told him he was not allowed on the property. Ware explained Banks spoke with the Wave Rider property manager about Ware staying at the condominium as his guest, and maintained no one from the Wave Rider management ever told him he could not be on the property.

In response to Ware's answers, the solicitor informed the trial court the State intended to call two reply witnesses, including the property manager of the Wave Rider. The solicitor indicated the property manager would testify he told Ware a few days before the shooting that Ware was not allowed on the property and he would not rent a condominium to Ware "because of problems in the past." Ware objected to this evidence on the grounds it was impeachment on a collateral matter, improper character evidence, and inadmissible under Rule 403, SCRE. The trial court stated, "Well, the allegations have already been made. I'm going to allow it," ruling the testimony was being offered to challenge Ware's credibility, which was "a huge evidentiary matter."

Over Ware's renewed objection, the property manager testified he had previously refused to rent Ware a condominium because management had problems with him in the past. The property manager did not elaborate about the problems he was referencing, but stated he told all employees Ware was not allowed on the property.

During closing arguments, the State referred to the property manager's testimony while discussing Ware's credibility, stating: "He lied about being banned from the Wave Rider."

## II.

Ware argues the trial court erred in allowing the property manager's reply testimony. Although we agree the trial court erred by admitting the testimony, we find the error harmless beyond a reasonable doubt.

We may only reverse evidentiary rulings of the trial court for abuse of discretion, meaning they rest on an error of law or inadequate factual support. *Morin v. Innegrity, LLC*, 424 S.C. 559, 576, 819 S.E.2d 131, 140 (2018). Likewise, "[t]he scope of cross-examination is within the discretion of the trial judge, whose decision will not be reversed on appeal absent a showing of prejudice." *State v. Colf*, 337 S.C. 622, 625, 525 S.E.2d 246, 247-48 (2000). The same is true for the admission of reply testimony. *State v. Todd*, 290 S.C. 212, 214, 349 S.E.2d 339, 340-41 (1986).

The property manager's reply testimony that he refused to rent a condominium to Ware because of "problems with [Ware] in the past" was improper impeachment on a collateral matter. Once Ware denied the property manager had banned him from the property, the State could not try to prove it by extrinsic evidence. *See* Rule 608(b), SCRE. As such, the trial court erred by admitting extrinsic evidence to prove a specific instance of conduct unrelated to truthfulness to attack Ware's credibility.

The State contends the testimony was proper rebuttal evidence because Ware had placed his character into evidence. Ware testified he had a good relationship with Banks, helped out around the condominium, bought groceries and beer for everyone at the condominium, and Banks told him he was the "greatest." This did not inject his character into the trial. *State v. Young*, 378 S.C. 101, 106, 661 S.E.2d 387, 389-90 (2008). As a general rule, character evidence is limited to opinion testimony about the defendant's character, and specific instances of the defendant's conduct may only be brought out on cross-examination of the character witness. *See* Rule 405(a), SCRE.

Still, we find the evidence harmless beyond a reasonable doubt. The State's case against Ware was quite strong. The jury heard of the acrimony between Ware and Banks, which resulted in Banks telling Ware he had to move out of the condominium. Boatwright testified she overheard the entire episode. The owner of the liquor store testified about Ware's malicious mutterings. Ware admitted he owned the rifle, and it was in his possession at the time of the murder and when he was apprehended. The State's reference to the property manager's testimony during its closing was minor. Therefore, any error in allowing the reply testimony of the property manager was harmless beyond a reasonable doubt, and the State presented overwhelming evidence supporting the murder conviction. *See State v. Brown*, 424 S.C. 479, 493, 818 S.E.2d 735, 743 (2018) (holding evidentiary error harmless when evidence of guilt is overwhelming, and error was insubstantial and could not have affected result).

**AFFIRMED.**[1]

**KONDUROS, MCDONALD, and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.