# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Michael Scott Simmons, Appellant.

Appellate Case No. 2016-001975

———————

Appeal From Richland County
R. Knox McMahon, Circuit Court Judge

———————

Opinion No. 27959
Heard November 7, 2018 – Filed March 25, 2020

———————

## REVERSED AND REMANDED

———————

Appellate Defender Susan B. Hackett, of Columbia, for Appellant.

Attorney General Alan M. Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

———————

**JUSTICE HEARN:** Appellant Michael Simmons was convicted of six counts of sexual exploitation of a minor in the second degree pursuant to section 16-15-405 of the South Carolina Code of Laws. Simmons contends this provision is unconstitutionally overbroad because it criminalizes conduct that is not limited to visual representations of actual minors or obscenity, and thus violates the First Amendment. Additionally, Simmons contends the trial court erred in refusing to suppress information gathered pursuant to a search warrant supported by allegedly

stale information and in finding defense counsel opened the door to evidence of suspected child pornography. While we uphold the constitutionality of section 16-15-405 and the validity of the search warrant, we reverse Simmons' convictions because the trial court erred in finding defense counsel opened the door.

## FACTS

In November 2013, Detective Kevin Murphy of the Berkeley County Sheriff's Office began investigating computers engaged in file sharing of images and videos containing child pornography. Through specially designed software, Murphy identified the IP address of a computer he suspected received six videos of child pornography and determined the address was assigned to Time Warner Cable. Murphy then downloaded the six videos onto a disk as part of his investigation. Four months later, Murphy contacted the Attorney General's office, which obtained the subscriber information by court order. This information revealed the computer was connected to the account of Ron and Wendy Doiron, who lived in Columbia with Ron's teenage son, two other young children, and Simmons. Simmons joined the army in 2006 and finished his service at Fort Jackson. After leaving the army, he remained in Columbia, worked for Time Warner Company, and moved in with the Doiron family.

Murphy contacted investigators with the Columbia Police Department, who obtained a search warrant for the residence in June 2014 based on the information discovered seven months earlier. During the search, law enforcement seized twenty electronic devices, including four items found in Simmons' bedroom. Among the four devices were a desktop computer and an external hard drive, which are the focus of this appeal.

Jon VanHouten, a computer forensic examiner, investigated the devices. VanHouten did not review each one in the same manner; instead, he employed a "full examination" on the devices found in Simmons' bedroom, including the desktop and external hard drive, and a "preview" on the remaining items seized from the home. According to VanHouten, a forensic preview is essentially a surface-level review of a device, whereas a full examination uses forensic software to examine a device in greater detail. During his examination of Simmons' desktop computer, VanHouten was unable to find any videos or images depicting child pornography, including the six videos Murphy traced to that IP address. However, VanHouten was able to find references to those videos, which suggested the files previously had existed on the desktop. Additionally, he found search terms commonly associated

with child pornography in the internet search history and files he thought related to child pornography based on their names.

VanHouten also performed a full examination of the external hard drive purportedly attached to Simmons's desktop and found eight videos of what he believed to be child pornography. These videos were recovered in the recycle bin folder on the hard drive and were included with other videos depicting adult pornography. VanHouten did not find any evidence of child pornography on the remaining devices.

The Doirons informed law enforcement they did not know anything about the images or videos, and investigators quickly focused on Simmons. He denied downloading or viewing the material, but he did admit he used a file sharing program to illegally download music and Blue-ray movies, which was the same type of file Murphy used to download the six videos. Simmons also acknowledged the computer and external hard drive at issue belonged to him. However, Simmons contended he frequently permitted others to use his computer, and that it was not password protected. Further, Simmons noted the Doirons' teenage son often accessed his computer, including to watch videos. The son initially denied downloading illegal movies through file sharing and viewing any type of pornography, but he later conceded he had previously done both. The son testified that he used Simmons' computer but claimed he never did so alone.

Simmons was charged with six counts of sexual exploitation of a minor in the second degree for each of the six videos Murphy downloaded that corresponded with the desktop computer's IP address. However, the State did not charge Simmons with the eight videos found on the external hard drive. Simmons made several pre-trial motions, seeking to: (1) declare section 16-15-405 unconstitutionally overbroad; (2) suppress the evidence seized pursuant to the search warrant because the information in the affidavit was stale; and (3) suppress evidence of the eight videos contained on the external hard drive as unfairly prejudicial and improper character evidence. The trial court denied the first two motions, finding the statute was constitutional and that the seven-month delay between the discovery of suspected child pornography and the issuance of the search warrant did not render the information stale.

Regarding suppression of the eight videos on the external hard drive, the State initially stated during pretrial motions that it would not play them to the jury. Instead, it sought to ask VanHouten whether he recovered videos on any device to demonstrate Simmons would intentionally seek out child pornography before deleting it to avoid detection. The State asserted this testimony would help explain

why the six videos that Murphy downloaded were not found on the desktop. Defense counsel contended the State was attempting to introduce improper character evidence by admitting evidence of uncharged acts, especially since it would shift the jury's focus away from the conduct actually charged. The trial court agreed with Simmons and excluded any discussion pertaining to the videos recovered from the external hard drive.

On direct examination, the State questioned VanHouten about his investigation into the devices seized. VanHouten confirmed he examined all the devices listed on the search warrant return, either as a preview or full examination. This list included the external hard drive, although he did not focus on that piece of evidence during his testimony. Further, VanHouten noted,

> As far as the actual computer systems, I did a forensic preview . . . when the investigator told me what he was looking for, he specifically pointed out this . . . particular item is something we need to focus on. I would go ahead and do a complete forensic image on that because the case agent would know the best about the case itself. The rest of the stuff, the rest of the laptops or computers that were involved . . . I conducted a forensic preview.

VanHouten confirmed he did a full examination on the desktop computer even though he did not discover any videos. However, he continued to investigate the computer because "[t]his was one of the devices that the submitting agent or investigator said was pertinent to his case." Regarding the other computers seized from the home, he noted he only did a preview, and he did not perform a full examination on those devices because he did not find anything suspicious. Specifically, he noted on direct:

> Q: And what did you look for?
>
> A: Basically photos, videos . . . certain deleted photos or videos, desktop cache, anything in the subfolders, downloads, things of that nature.
>
> Q: And you didn't find any evidence of that?
>
> A: Relevant to this case? No.
>
> Q: On any of the computers that were submitted to you?

A: No.

Q: Besides this one?

A: Right.

Q: And it's your testimony that you attempted to or did conduct analysis on all of the items together?

A: The ones that I could, yes.

Q: Okay.

On cross, VanHouten readily acknowledged the investigating officer directed him to focus on certain items. Defense counsel categorized the devices as "focused," which consisted of those found in Simmons' bedroom and were fully examined, and "nonfocused," which were the other items seized in the home and subject to only a preview. After defense counsel finished cross-examination, the State asserted the door had been opened to the introduction of the eight videos found on the hard drive because defense counsel's questions implied that VanHouten did not discover child pornography on any of the focused items. In response, defense counsel noted he and the solicitor had agreed off the record to not discuss the external hard drive, and he asked the same question the State did during direct—whether child pornography was found on the desktop.

The trial court agreed with the State, finding defense counsel's cross examination implied that VanHouten did not find any videos of child pornography on the focused items, which was not the case. Further, the court relied on the fact that the external hard drive was connected to Simmons' computer, although that was arguably disputed. Overall, the court noted the testimony regarding the external hard drive went "to the full and complete picture of the forensic computer examination performed by . . . VanHouten on the items that were recovered during the course of the search warrant." Based on the court's ruling, the State played the eight videos before the jury.

At the conclusion of trial, Simmons requested a jury charge on third-party guilt. The trial court denied the request, finding the proposed instruction constituted an impermissible charge on the facts. Ultimately, Simmons was convicted of six counts of sexual exploitation of a minor in the second degree. The trial court

sentenced Simmons to ten years' imprisonment on each count, to be served concurrently. Simmons filed an appeal to the court of appeals, and we certified the case pursuant to Rule 204(b), SCACR.

## ISSUES

I.      Is section 16-15-405 of the South Carolina Code unconstitutionally overbroad?

II.     Did the trial court err in refusing to suppress evidence seized pursuant to a search warrant because the evidence used to support probable cause was purportedly stale?

III.    Did the trial court err in finding defense counsel opened the door to evidence of child pornography found on an external hard drive that the State did not include as a basis for charging Simmons?

## DISCUSSION

### I.      Constitutionality of Section 16-15-405

Simmons contends section 16-15-405 is unconstitutionally overbroad because it is not limited to "visual representations" of *actual* minors or obscenity and that the language in this provision is virtually indistinguishable from that used in the federal statute found to be unconstitutionally overbroad by the United States Supreme Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). We disagree.

We begin by acknowledging statutes are presumptively constitutional and that our scope of review is limited. *In re Stephen W.*, 409 S.C. 73, 76, 761 S.E.2d 231, 232 (2014) (quoting *State v. Harrison*, 402 S.C. 288, 292, 741 S.E.2d 727, 729 (2013)). Accordingly, "[a] legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear beyond a reasonable doubt." *Id.* (quoting *Harrison*, 402 S.C. at 293, 741 S.E.2d at 729). Moreover, "[t]he party challenging the constitutionality of the statute has 'the burden of proving the statute unconstitutional.'" *Id.* (quoting *State v. Jones*, 344 S.C. 48, 58, 543 S.E.2d 541, 546 (2001)).

In *Ashcroft*, a trade association challenged section 2256(8)(B) of the Child Pornography Prevention Act of 1996 ("CPPA"), which prohibited "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in

sexually explicit conduct." *Ashcroft*, 535 U.S. at 241. The Supreme Court held the provision was unconstitutionally overbroad because it applied to materials that were neither obscene nor child pornography. *See Miller v. California*, 413 U.S. 15, 24 (1973) (noting the First Amendment does not protect obscene speech and adopting a three-part test: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value"); *New York v. Ferber*, 458 U.S. 747 (1982) (holding child pornography falls outside the protections of the First Amendment). The Supreme Court explained the CPPA went beyond *Miller* and extended to "images that appear to depict a minor engaging in sexually explicit activity without regard to the *Miller* requirements." *Ashcroft*, 535 U.S. at 246. Accordingly, the Supreme Court determined "the CPPA cannot be read to prohibit obscenity, because it lacks the required link between its prohibitions and the affront to community standards prohibited by the definition of obscenity." *Id.* at 249.

Implicit in *Ashcroft* was a concern that the CPPA's prohibitions extended to materials produced without the use of real children, such as virtual child pornography and works in which a participant *appeared* to be a minor but was actually an adult. Ultimately, the Supreme Court concluded "[section] 2256(8)(B) cover[ed] materials beyond the categories recognized in *Ferber* and *Miller*" and invalidated the law as overbroad and unconstitutional. *Id.* at 256.

Turning to our statute, Simmons contends section 16-15-405 is virtually identical to the federal provision at issue in *Ashcroft*. The relevant statutory language provides:

(A) An individual commits the offense of second degree sexual exploitation of a minor if, knowing the character or content of the material, he:

(1) records, photographs, films, develops, duplicates, produces, or creates digital electronic file material that contains a visual representation of a minor engaged in sexual activity or appearing in a state of sexually explicit nudity when a reasonable person would infer the purpose is sexual stimulation; or

(2) distributes, transports, exhibits, receives, sells, purchases, exchanges, or solicits material that contains a visual representation of a minor engaged in sexual activity or appearing in a state of sexually explicit nudity when a reasonable person would infer the purpose is sexual stimulation.

(B) In a prosecution pursuant to this section, the trier of fact may infer that a participant in sexual activity or a state of sexually explicit nudity depicted in material as a minor through its title, text, visual representations, or otherwise, is a minor.

S.C. Code Ann. § 16-15-405 (2015).  "Minor" is defined as "an individual who is less than eighteen years old," and "material" is defined as "pictures, drawings, video recordings, films, digital electronic files, or other visual depictions or representations but not material consisting entirely of written words." S.C. Code Ann. § 16-15-375(2)-(3) (2015).

At the outset, we note that section 16-15-405 does not contain the same language as the provision in *Ashcroft*. There, the federal statute criminalized a "visual depiction" of someone who "is, or *appears to be*, of a minor engaging in sexually explicit conduct."  *Ashcroft*, 535 U.S. at 241 (emphasis added). Accordingly, the statute reached conduct depicting a person who appeared to be a minor but instead was an adult or imagery that did not include actual children. Because the provision encompassed protected speech, it could not withstand constitutional scrutiny.

Conversely, section 16-15-405 lacks the problematic "appears to be" language. Further, our statute criminalizes only those materials that "contain a visual representation of a *minor*," which is defined under section 16-15-375. Together, these provisions proscribe material that contains an actual person under the age of eighteen. Accordingly, section 16-15-405 does not suffer from the same flaws as the provision in *Ashcroft*.  Moreover, our view is consistent with other jurisdictions that have considered the constitutionality of similar statutes.  *See, e.g.*, *State v. Fingal*, 666 N.W.2d 420, 424 (Minn. Ct. App. 2003) ("The operative phrase for the *Ashcroft* [C]ourt was 'appears to be.'  But unlike the federal statute, the Minnesota statute does not pertain to visual images that 'appear to be' of sexual activity involving a minor . . . ."); *State v. Howell*, 609 S.E.2d 417, 422 (N.C. Ct. App. 2005) ("[T]he CPPA prohibits images in which the person only *appears* to be a minor, whereas our statutes prohibit only depictions which use an *actual* minor in their production."); *State v. Pickett*, 211 S.W.3d 696, 703 (Tenn. 2007) (determining the plain language

of Tennessee statute requires image be of "a minor," which is "markedly different from the [CPPA], which criminalized the possession of any sexually explicit image that 'is, or *appears to be*' of a minor").

In addition, Simmons argues the permissive inference in subsection 16-15-405(B) eliminates the State's burden to prove the visual representation or depiction involved the use of an actual minor. In Simmons' view, this inference, combined with the statutory language of "depiction" or "representation," prohibits a substantial amount of protected speech. We disagree and find the Supreme Court of Ohio's analysis of a similar statute instructive:

> [The Ohio statute] merely permits, and does not require, a fact-finder to infer from circumstantial evidence the age of the person in an image. The state still must prove all elements beyond a reasonable doubt, including that a real child is depicted, to support a conviction for possession of child pornography under [the statute]. In a state prosecution, the inference will not override the actual content of the image. If the evidence establishes that the defendant possessed an image generated without the use of a child, the defendant should be acquitted. Despite any appearance or representation, if no actual minor is depicted, there is no violation of [the statute].

*State v. Tooley*, 872 N.E.2d 894, 905-06 (Ohio 2007). Subsection (B) operates merely as a permissive inference that allows, but does not require, the trier of fact to infer that a participant in the material is a minor. The State is still required to prove all elements of the crime, including that the participant is an individual under the age of eighteen. Accordingly, we uphold the constitutionality of section 16-15-405.

## II. Staleness

Simmons also argues the trial court erred in failing to suppress evidence seized pursuant to the June 2014 search warrant when the supporting affidavit was based on information from November 2013, contending this delay rendered the underlying facts stale. We disagree.

Appellate courts apply a deferential standard of review when reviewing an appeal from a motion to suppress evidence based on the Fourth Amendment. *State v. Moore*, 415 S.C. 245, 251, 781 S.E.2d 897, 900 (2016). We will only reverse if there is clear error, meaning we must affirm if there is any evidence to support the trial court's decision. *State v. Provet*, 405 S.C. 101, 107, 747 S.E.2d 453, 456 (2013).

It is elementary that a search warrant must be supported by probable cause, which is determined based on the totality of the circumstances. *State v. Dill*, 423 S.C. 534, 542, 816 S.E.2d 557, 562 (2018). We have recognized an affidavit in support of a search warrant "must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." *State v. Winborne*, 273 S.C. 62, 64, 254 S.E.2d 297, 298 (1979). Moreover, "the reason for this rule is that probable cause, with time, dissipates." *Id.*

Although this Court has not addressed staleness in the context of a child pornography case, we find instructive the federal appellate courts which have examined the issue. The general consensus is that a significant delay between the discovery of incriminating material and the issuance of a warrant will not diminish probable cause for a search. *See, e.g.*, *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) ("[S]even months is too short a period to reduce the probability that a computer search will be fruitful to a level at which probable cause has evaporated."); *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (rejecting staleness argument in four-month delay); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010) (finding seven months did not render information stale); *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010) (holding a five-month delay did not equate to staleness); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (rejecting staleness argument in six-month delay).

The trial court based its decision on this precedent and the distinctive nature of child pornography cases. We find evidence supports the court's decision and affirm the denial of Simmons' motion to suppress. While our conclusion today upholds the validity of the search warrant in this case, we emphasize there is no bright-line rule as to what length of delay is acceptable in child pornography cases. Simply because a case involves child pornography does not immunize substantial delays from judicial scrutiny. Rather, the determination of whether a lapse of time is sufficient to invalidate a search warrant for staleness is case-specific.

## III. Opening the Door

Simmons contends the trial court erred in finding defense counsel opened the door to testimony regarding the eight videos found on the external hard drive. The State asserts the court properly found defense counsel opened the door by implying VanHouten did not find anything on the "focused" items, when the eight videos of suspected child pornography were recovered on the hard drive. We agree with Simmons.

A party may introduce inadmissible evidence in rebuttal when the opponent places a fact at issue. *State v. Young*, 364 S.C. 476, 485, 613 S.E.2d 386, 391 (Ct. App. 2005) ("The jurisprudence of this State contains a plethora of enlightening cases establishing and explicating the proposition that a defendant may open the door to what would otherwise be improper evidence."), *aff'd as modified*, 378 S.C. 101, 661 S.E.2d 387 (2008). Further, "[o]nce the defendant opens the door, the solicitor's invited response is appropriate so long as it . . . does not unfairly prejudice the defendant;" accordingly, the solicitor's response must be proportional. *Ellenburg v. State*, 367 S.C. 66, 69, 625 S.E.2d 224, 226 (2006). However, we will not condone "a thinly-veiled attempt to show propensity by way of the open-door doctrine." *State v. Heyward*, 426 S.C. 630, 637, 828 S.E.2d 592, 595 (2019), *reh'g denied* (June 28, 2019). We review the trial court's evidentiary decision for an abuse of discretion. *State v. Foster*, 354 S.C. 614, 620–21, 582 S.E.2d 426, 429 (2003).

Prior to trial, the court granted Simmons' motion to suppress eight videos of alleged child pornography found on the external hard drive in his room. Counsel for both parties subsequently agreed not to discuss this external hard drive during the trial. On direct examination, the State asked VanHouten whether he found any child pornography files on Simmons' desktop computer, to which he responded he did not. On cross-examination, Simmons' trial counsel, who was well aware of the possibility of opening the door, carefully tailored his questions to track the State's direct examination. Indeed, the questions regarding the contents of the desktop were effectively identical. Defense counsel asked,

> Q: And to be clear, this desktop, the six files . . . that [Simmons] is charged with and that we've been talking about and that they were investigating, those were not found, those videos were not found on that desktop?

> A: No. That is correct. No, no child pornography videos were found anywhere on the desktop.

Immediately thereafter, defense counsel returned to questioning VanHouten about each of the non-focus items, which only underwent a preview examination. The theme of cross-examination was that law enforcement investigated Simmons to the exclusion of all other possible perpetrators, as evidenced by the items on which it focused and its analysis thereof. Counsel did not elicit any substantive testimony regarding the hard drive on which the pornography was found; instead, counsel grouped the items as "focus" and "non-focus." After finding counsel had opened the door, the court permitted the State to play all eight pornographic videos for the jury

despite the State noting during pretrial motions that it did not intend to publish them. Rather, the State only sought to elicit testimony from VanHouten that the videos were recovered on the hard drive from Simmons' room.

Even acknowledging our generous standard of review in these situations, defense counsel's questioning was not sufficient to permit the State to introduce the previously-excluded evidence in rebuttal. Indeed, the State had already elicited testimony from VanHouten on direct that there was no child pornography found on Simmons' desktop. Once the State received this response, defense counsel was certainly entitled to drill down on that fact during cross-examination. The trial court's ruling that defense counsel's same questioning on cross opened the door to the excluded evidence essentially allowed the State to achieve what it was prohibited from doing directly—discussing and ultimately playing the eight videos for the jury. The court's decision was, therefore, an abuse of discretion that deeply prejudiced Simmons' defense.

We also reject that the sequence of questioning implied VanHouten had conducted a full analysis of the hard drive and found nothing. During cross, counsel listed the "non-focus" items, asked about the contents of the desktop, and did not mention the "focus" external hard drive. We disagree that this prudent cross-examination created the implication that VanHouten did not find anything on the external hard drive, as the jury was told of all items that were investigated, the type of investigation performed, and that the desktop contained no pornography, which it already knew. Finally, the fact that the external hard drive was purportedly connected to the desktop at the time the search warrant was executed does not change our door-opening analysis, as this detail cannot serve as the basis for permitting the State to not only elicit testimony on the existence of the videos but actually show them to the jury—both of which undoubtedly would shift the jury's focus from Simmons' charged conduct to other uncharged acts. Even if evidence arguably exists to support the trial court's decision—which we reject—the State's response of playing all the videos for the jury far exceeded the proper scope, and therefore would also be error. *See Bowman v. State*, 422 S.C. 19, 42, 809 S.E.2d 232, 244 (2018) (affirming based in part on the fact that the State responded proportionally when defense counsel opened the door). Based on the foregoing, we hold the trial court abused its discretion in ruling that the door had been opened to evidence found on the external hard drive.[1]

---

[1] Simmons also argues the court erred in declining to instruct the jury on third-party guilt. Because we reverse Simmons' convictions, we decline to reach this issue.

**CONCLUSION**

While we find section 16-15-405 constitutional and that the search warrant is valid, we reverse Simmons' convictions because the trial court erred in finding defense counsel opened the door to evidence of suspected child pornography and remand for a new trial.

**REVERSED AND REMANDED.**

**KITTREDGE and FEW, JJ., concur.  BEATTY, C.J., concurring in part and dissenting in part in a separate opinion in which JAMES, J., concurs.**

---

*Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address additional arguments after reaching a dispositive issue).

**CHIEF JUSTICE BEATTY:** Respectfully, I concur in part and dissent in part. I agree with the majority that: (1) section 16-15-405 of the South Carolina Code, which criminalizes the sexual exploitation of a minor, is not unconstitutionally overbroad; and (2) the trial court did not err in refusing to suppress evidence seized pursuant to the search warrant. In contrast to the majority, I would find (1) defense counsel opened the door to the introduction of VanHouten's testimony regarding the contents of the external hard drive; and (2) the trial court properly refused to instruct the jury on third-party guilt.[2] Accordingly, I would affirm Simmons's convictions and sentences.

## I.      Opening the Door

Simmons argues the trial court erred in ruling that defense counsel's line of questioning opened the door to VanHouten's testimony regarding the eight videos found on the external hard drive. Unlike the majority, I would find there is evidence to support the trial court's ruling.

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 494–95 (2013) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* at 349, 737 S.E.2d at 495 (quoting *Douglas*, 369 S.C. at 429–30, 632 S.E.2d at 848).

Generally, character evidence is inadmissible to prove that a person acted in conformity with that trait on a particular occasion. Rule 404(a), SCRE. Additionally, absent an exception, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. Furthermore, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE.

However, "[i]t is firmly established that otherwise inadmissible evidence may be properly admitted when opposing counsel opens the door to that evidence." *State v. Page*, 378 S.C. 476, 482, 663 S.E.2d 357, 360 (Ct. App. 2008). This Court has

---

[2]  Because the majority reversed Simmons's convictions based on the admission of the evidence found on the external hard drive, it declined to address this issue.

held that "[w]hen a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially." *State v. Jackson*, 364 S.C. 329, 336, 613 S.E.2d 374, 377 (2005).

Pursuant to Simmons's pre-trial motion to suppress, the trial court excluded evidence of the eight videos contained on the external hard drive. But, the trial court later determined defense counsel's line of questioning opened the door to VanHouten's testimony regarding this evidence.

While cross-examining VanHouten, defense counsel sought to distinguish the items seized from the home as "focus items" and "non-focus items."[3] Defense counsel went through each of the twenty items VanHouten received for examination and then stated that he wanted to "make a chart of the non-focus items." He proceeded to list each of the sixteen non-focus items. VanHouten testified that he did not perform a full examination on the non-focus items.

Defense counsel next asked specifically about the desktop, which was seized from Simmons's room and listed as a focus item. The following exchange then occurred:

Q:    And to be clear, this desktop, the six files, the six R@yGold files that [Simmons] is charged with and that we've been talking about and that they were investigating, those were not found, those videos were not found on that desktop?

A:    No. That is correct. No, no child pornography videos were found anywhere on the desktop.

Immediately thereafter, defense counsel returned to questioning VanHouten about each of the *non*-focus items. With respect to an external hard drive not found in Simmons's room, which defense counsel explicitly referred to as "number 13" on the list of non-focus items, VanHouten testified that he did a preview (rather than a full examination) and did not find anything relevant. Defense counsel subsequently concluded his cross-examination by again asking whether VanHouten found the six

---

[3] The term "focus items" refers to the four items seized from Simmons's bedroom. The term "non-focus items" refers to the remaining sixteen items that were seized from areas other than Simmons's room.

videos Simmons was charged with on the desktop. VanHouten responded "[t]here [were] no videos of child pornography found on the desktop."

In my opinion, there is evidence in the record to support the trial court's finding that defense counsel opened the door. Initially, I would emphasize that the State made no reference to the external hard drive during its direct examination of VanHouten. In fact, when questioning VanHouten about the desktop found in Simmons's room, the State carefully limited its questions by repeatedly referring to the desktop as "this device," never mentioning the external hard drive. Because there was no reference made on direct examination, it was not necessary for defense counsel to question VanHouten about the hard drive.

Yet, defense counsel proceeded to ask VanHouten to list each of the twenty items he received for examination. Defense counsel then pointedly questioned VanHouten about his examination of the desktop. In response, VanHouten testified that "no child pornography videos were found anywhere on the desktop." While defense counsel did not expressly refer to the external hard drive attached to the desktop located in Simmons's room, his questioning implied that nothing relevant to the case was found on the items examined by VanHouten. Defense counsel's questions suggested to the jury that VanHouten's forensic examination failed to reveal any relevant evidence, when in reality, VanHouten did find evidence of child pornography on the external hard drive attached to the desktop found in Simmons's room. The trial court was correct in allowing the State to clarify this false impression on redirect examination. *Cf. State v. Northcutt*, 372 S.C. 207, 221, 641 S.E.2d 873, 880 (2007) (holding the appellant was entitled to introduce evidence rebutting "false impression" conveyed to the jury).

Further, at the time the trial court made its preliminary ruling excluding the external hard drive, the court was unaware of evidence that the external hard drive was attached to the desktop found in Simmons's room. However, in its ruling during trial, the court noted the external hard drive was connected to Simmons's desktop. Although defense counsel challenged whether the two devices were actually connected, the search warrant return—which was entered into evidence as an exhibit—stated the external hard drive was "hooked to" the desktop. Therefore, it was reasonable for the trial court to conclude that testimony regarding the external hard drive went "to the full and complete picture of the forensic computer examination performed by . . . VanHouten on the items that were recovered during the course of the search warrant."

Accordingly, because there is evidence in the record to support the trial court's decision, I would hold the court did not abuse its discretion in finding defense counsel opened the door to VanHouten's testimony regarding the external hard drive.

## II.    Third-Party Guilt Charge

Simmons asserts the trial court erred in declining to instruct the jury regarding third-party guilt because evidence was presented of third-party guilt, the jury required instructions regarding how to analyze such evidence, and instructions were necessary to ensure the burden of proof remained on the State in light of the presentation of third-party guilt evidence.  I disagree.

"An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion."  *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (citation omitted).  "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial."  *Id.* (quoting *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011)).  Furthermore, "to warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant."  *Id.* (quoting *Brandt*, 393 S.C. at 550, 713 S.E.2d at 603).

The trial court is required to charge the law as determined from the evidence presented at trial.  *State v. Gates*, 269 S.C. 557, 561, 238 S.E.2d 680, 681 (1977). "The admissibility of evidence of third-party guilt is governed by *State v. Gregory*, 198 S.C. 98, 16 S.E.2d 532 (1941)."  *State v. Cope*, 405 S.C. 317, 341, 748 S.E.2d 194, 206 (2013).  The *Gregory* rule states:

> [E]vidence offered by [the] accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible . . . [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.

*Gregory*, 198 S.C. at 104–05, 16 S.E.2d at 534–35 (internal citations omitted).

Throughout the trial, Simmons's defense strategy involved eliciting testimony indicating that Kyle was responsible for downloading and uploading the child pornography, rather than Simmons. In my view, Simmons did not present the requisite "train of facts or circumstances" tending "clearly to point out" Kyle as the guilty party. Instead, the evidence had no other effect than to cast suspicion or "raise a conjectural inference as to the commission of the crime" by Kyle. Therefore, I would conclude that Simmons was not entitled to the requested jury instruction.

Further, because the instruction would have bolstered Simmons's version of the facts, it amounted to an impermissible charge on the facts. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."); *State v. Kennedy,* 272 S.C. 231, 234, 250 S.E.2d 338, 339 (1978) ("[T]he trial judge must refrain from all comment which tends to indicate his opinion as to the weight or sufficiency of the evidence, the credibility of witnesses, the guilt of the accused or as to controverted facts.").

Finally, I believe the trial court's jury instruction made clear that the State had the burden of proof. Therefore, the proposed charge was unnecessary, and the trial court's refusal to give the instruction did not prejudice Simmons.

## III.    Conclusion

Based on the foregoing, I would affirm the trial court's decision (1) that section 16-15-405 is constitutional; (2) that defense counsel opened the door to testimony regarding the external hard drive; (3) to refuse to suppress the evidence seized pursuant to the search warrant; and (4) to decline to instruct the jury on third-party guilt. Accordingly, I would affirm Simmons's convictions and sentences.

**JAMES, J., concurs.**